UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WANDA M. MILLER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | )<br>)　No. CV-05-3075-MWL<br>)<br>)　ORDER GRANTING PLAINTIFF'S<br>)　MOTION FOR SUMMARY JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on June 26, 2006. (Ct. Rec. 25, 28).  Plaintiff Wanda M. Miller ("Plaintiff") filed a reply brief on June 26, 2006.  (Ct. Rec. 32).  Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Richard M. Rodriguez represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 6).  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 25), **DENIES** Defendant's Motion for Summary Judgment (Ct. Rec. 28), and **REMANDS** the case for further proceedings.

**JURISDICTION**

On March 11, 1998, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability since November 5, 1996. (Administrative Record ("AR") 83-85, 232-234). The applications were denied initially and on reconsideration.

On September 30, 1999, Plaintiff first appeared before Administrative Law Judge ("ALJ") Joel T. Elliot, at which time testimony was taken from Plaintiff and vocational expert Sheri Bonner. (AR 35-70). On January 28, 2000, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 15-23). The Appeals Council denied a request for review in December of 2002. (AR 4-6). Plaintiff thereafter filed a claim in the federal district court. On September 2, 2003, based on a stipulation of the parties, United States District Judge Fred Van Sickle reversed the ALJ's decision and remanded the matter for further proceedings. (AR 301-302). Judge Van Sickle ordered an ALJ, on remand, to update the record with progress notes and a medical source statement from Plaintiff's treating physician, Elsie Tupper, M.D., develop the record concerning Plaintiff's mental impairments, and, if necessary, obtain medical and vocational expert testimony to complete the record. (AR 301).

Pursuant to the remand order, a second hearing was held on May 23, 2005, before ALJ Ralph Jones. (AR 623-653). Testimony was taken from Plaintiff and vocational expert Paul Morrison on this occasion. (AR 623-653). On June 6, 2005, the ALJ issued a decision finding that Plaintiff was disabled. (AR 285-294). However, rather than find that Plaintiff was disabled since her

1    alleged onset date, the ALJ inferred an onset date of January 1,

2    2003, finding that Plaintiff remained capable of performing her

3    past relevant work at all times prior to that date.  (AR 294).

4    The Appeals Council declined to assume jurisdiction in this

5    matter, making the ALJ's decision the final decision of the

6    Commissioner, which is appealable to the district court.

7    Plaintiff filed this action for judicial review on August 12,

8    2005.  (Ct. Rec. 2).

9                        **STATEMENT OF FACTS**

10        The facts have been presented in the administrative hearing

11   transcript, the ALJ's decision, the briefs of both Plaintiff and

12   the Commissioner and will only be summarized here.

13        Plaintiff was 50 years old on the date of the ALJ's decision.

14   (AR 83, 294).  Her educational background includes a GED and

15   vocational training described as "remedial education & work

16   orientation" as well as "vision care specialist."  (AR 94).  Her

17   past relevant work consists of work as a meat wrapper, a waitress,

18   a receptionist, a grinder, an optometric assistant, and a

19   dispensing optician.  (AR 96).  Plaintiff's last attempt to work

20   consisted of a one-day position as a cook in December of 1997

21   which she was unable to return to due to the job's physical

22   demands.  (AR 90, 96, 203).  Plaintiff alleges disability since

23   November 5, 1996, due to fibromyalgia, lumbar strain, partial

24   amputation of the left index finger, widespread pain, memory loss,

25   concentration difficulties, insomnia, chronic fatigue and

26   repetitive strain injuries.  (AR 90).

27   ///

28   ///

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1.  If the impairment meets or equals one of the listed
impairments, Plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents Plaintiff from
performing work which was performed in the past.  If a Plaintiff
is able to perform previous work, that Plaintiff is deemed not
disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
At this step, Plaintiff's residual functional capacity ("RFC")
assessment is considered.  If Plaintiff cannot perform this work,
the fifth and final step in the process determines whether
Plaintiff is able to perform other work in the national economy in
view of Plaintiff's residual functional capacity, age, education
and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once Plaintiff establishes that a physical or mental
impairment prevents the performance of previous work.  The burden
then shifts, at step five, to the Commissioner to show that (1)
Plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which

Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

///

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since Plaintiff's alleged onset date, November 5, 1996.  (AR 286).  At step two, the ALJ found that Plaintiff has severe impairments, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 287-292).

The ALJ concluded that, from November 1996 through December 1997, Plaintiff retained the RFC to lift 50 pounds occasionally and 25 pounds frequently and sit, stand and/or walk for six hours in an eight-hour workday.  (AR 288).  The ALJ found that during that period of time, Plaintiff retained the RFC to return to her past relevant work as an optometric assistant, a receptionist and

a dispensing optician.  (AR 288-289).  Therefore, the ALJ determined that Plaintiff was not entitled to DIB and not eligible for SSI payments based on the applications protectively filed on March 11, 1998.  (AR 289).

From December 1997 through December 2002, the ALJ found that Plaintiff retained the RFC to lift 10 pounds frequently and 15 pounds occasionally and sit, stand and/or walk six hours in an eight-hour workday, and she could carry out only less demanding social interactions.  (AR 289-291).  The ALJ determined that, during that period of time, Plaintiff retained the RFC to return to her past relevant work as an optometric assistant and a dispensing optician.  (AR 291).  Therefore, the ALJ concluded that Plaintiff was not disabled during this period and was not eligible for SSI payments based on the application protectively filed on March 11, 1998.  (AR 291).

After January 1, 2003, the ALJ determined that the record revealed that Plaintiff's mental impairments grew more severe, her headaches occurred more frequently, and her fibromyalgia exacerbations grew in frequency and intensity.  (AR 291).  The ALJ found that, since January 1, 2003, Plaintiff has the RFC to lift 10 pounds frequently and 15 pounds occasionally and can sit, stand and/or walk for six hours in an eight-hour workday; however, Plaintiff also has marked limitations in her ability to interact appropriately with the public and is severely limited in her ability to interact appropriately with co-workers, and she is markedly limited in her ability to understand, remember and carry out detailed instructions, unable to travel in unfamiliar places and markedly limited in her abilities to work in close proximity

to others without being distracted by them.  (AR 292).  Given this RFC, and based on the vocational expert's testimony, the ALJ concluded that Plaintiff could not return to her past relevant work, nor could she make an adjustment to any other job.  (AR 293).  Accordingly, the ALJ found that, since January 1, 2003, Plaintiff has been under a disability within the meaning of the Social Security Act.  (AR 293-294).

## ISSUES

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.   The ALJ erred by inferring an onset date of disability without calling a medical expert to assist in making the inference; and

2.   The ALJ erred by basing his finding that Plaintiff was not disabled prior to January 1, 2003, on a hypothetical presented to the vocational expert which was not complete.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.   Onset Date**

Plaintiff alleges disability since November 5, 1996 due to a combination of impairments including fibromyalgia, memory problems, concentration difficulties and fatigue.  (Ct. Rec. 27-1, p. 24; AR 90).  Without the benefit of a medical expert, the ALJ determined that these impairments were not disabling at the time of her alleged onset date but inferred that they became disabling

by January 1, 2003. (AR 292-294). Plaintiff argues that the ALJ erred by failing to call a medical expert to determine the onset date of her disabilities. (Ct. Rec. 27-1).

After reviewing the record, the undersigned finds that the date of onset is unclear and that the ALJ therefore committed reversible error by failing to call a medical expert before inferring an onset date. Social Security Regulation ("SSR") 83-20 provides in relevant part that:

> [i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. . . . [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

In some cases, it may be possible based on the medical evidence of record to reasonably infer that the onset of disability occurred at a different time than as alleged by a plaintiff. When the impairment may be determined to have existed at a disabling level depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis.

In *Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991), the Ninth Circuit held that SR 83-20 requires that, "when the evidence regarding date of onset of mental impairment is ambiguous, as it is here, the ALJ should determine the date based on an informed inference. . . . Such an inference is not possible without the assistance of a medical expert." In *Morgan,* the court remanded the case to the ALJ so that the inference of the date of disability could be made with the help of a medical advisor.

///

///

     The ALJ should call on the services of a medical advisor when
onset must be inferred.  In *DeLorme v. Sullivan*, 924 F.2d 981, 948
(9th Cir. 1991), the Ninth Circuit held that in this context
"should" means "must."  If the "medical evidence is not definite
concerning the onset date and medical inferences need to be made,
SSR 83-20 requires the administrative law judge to call upon the
services of a medical advisor and to obtain all evidence which is
available to make the determination."  *Id.; see also Morgan*, 945
F.2d at 1079 (reversing in part an ALJ's determination of the
onset date of mental disorders without the assistance of a medical
expert).

     In this case, the record demonstrates that Plaintiff suffered
from various impairments prior to January of 2003.  As noted by
Plaintiff, the ALJ admitted that her conditions have worsened over
time and eventually became disabling.  (Ct. Rec. 27-1, p. 25; AR
290-293).  The ALJ specifically found that, after January 1, 2003,
the record revealed that Plaintiff's mental impairments grew more
severe, her headaches occurred more frequently, and her
fibromyalgia exacerbations grew in frequency and intensity.  (AR
291).  However, neither the ALJ, nor the medical sources of
record, depicts an exact date when Plaintiff's impairments became
disabling.  As argued in Plaintiff's reply brief, "[t]here is
nothing precise about [the ALJ's inferred date].  Why was her
condition disabling on January 1, 2003, but not December 31, 2002?
Why not November 2002 – or any other date between 1997 and 2002?
There is absolutely no explanation for why the ALJ chose January
1, 2003, instead of any other date."  (Ct. Rec. 32-1, p. 6).  The
undersigned agrees with Plaintiff that there is no explanation for

why Plaintiff was deemed disabled on January 1, 2003, as opposed
to any earlier date.

Although the ALJ chose January 1, 2003, as the date to start
providing benefits, there is nothing precise or definite about
that date.  Medical records reveal that, prior to January 1, 2003,
Plaintiff has been limited physically and mentally.  On August 29,
1997, Nartnucha Unhanand, M.D., examined Plaintiff and concluded
that she had mild degenerative disease.  (AR 206).  In February of
1998, Plaintiff's long-time treating physician, Elsie Tupper,
M.D., diagnosed gastritis, arthralgia, possible fibromyalgia and a
lumbosacral strain.  (AR 201).

Dr. Tupper summed up her treating physician opinion in a
medical report dated August 2, 2000 (revised on October 20, 2000).
(AR 244-247).  Dr. Tupper indicated that Plaintiff was diagnosed
with depression, gastroesophageal reflux disorder, irritable bowel
syndrome, diarrhea, strain of right shoulder and neck,
fibromyalgia, and carpal tunnel syndrome.  (AR 244).  Dr. Tupper
noted that Plaintiff needed to lie down one to two hours in the
morning and two hours in the afternoon due to fatigue and pain in
her back, feet and hips.  (AR 244).  Dr. Tupper also opined that
Plaintiff would be expected to miss 15 to 20 days of work per
month because of her impairments.  (AR 247).  Dr. Tupper
determined that the limitations she specified in the report had
existed since at least September of 1995 and that Plaintiff, due
to her restrictions, was not employable.  (AR 247).

Psychologist Jeff Teal, Ph.D., evaluated Plaintiff on May 26,
1998.  (AR 129-134).  He diagnosed Plaintiff with a major
depressive disorder recurrent, moderate severity, a dysthymic

disorder, late onset, a report of history of fibromyalgia, and occupational and economic problems and gave Plaintiff a current global assessment of functioning ("GAF") score of 55, with the highest score in the past year of 60.[1] Dr. Teal concluded that "depression would make employment difficult at this time." (AR 134).

On July 7, 1998, Neal R. Thompson, M.D., evaluated Plainitff (AR 135-140). Dr. Thompson diagnosed possible fibromyalgia, amputation tip of left index finger, chronic lumbosacral strain, and probable chronic depression. (AR 140). Dr. Thompson opined that Plaintiff would probably be able to work a full schedule with a work strengthening program, but, at the present time, her work load "would probably be limited to a third to a half of a work day." (AR 140).

On July 29, 1998, state agency reviewing physicians completed a psychiatric review technique form and indicated that Plaintiff would often have deficiencies of concentration, persistence and pace resulting in the failure to complete tasks in a timely manner. (AR 146-155).

On August 24, 1999, Daniel Ferber, M.D., evaluated Plaintiff. (AR 221-223). Dr. Ferber diagnosed major depressive disorder, recurrent, moderate, panic disorder, with agoraphobia, social phobia, dysthymic disorder, early onset, fibromyalgia, history of migraines, status post hysterectomy and single parent, lack of social supports and gave her a GAF score of 55. (AR 223). On

---

[1] A GAF of 51 to 60 indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks), OR moderate difficulty in social, occupational, or school function (e.g. few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

December 28, 1999, Dr. Ferber noted that Plaintiff was continuing to have significant difficulties with anxiety associated with being around others. (AR 461). Dr. Ferber noted on February 15, 2000, that Plaintiff continued to have difficulties with anxiety, anger, insomnia and depression. (AR 460).

Plaintiff also testified at both administrative hearings that she has suffered from fibromyalgia, general body pain, carpal tunnel syndrom, sleeplessness, panic attacks, migraine headaches, problems with self-worth, depression, anxiety, crying spells and lack of concentration. (AR 42-51, 628-643).

Where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date. *Morgan*, 945 F.2d at 1082-83; *DeLorme*, 924 F.2d at 848-49. The record, as described above, reflects that Plaintiff has experienced years of deteriorating health problems. Nevertheless, it is unclear from the record as it currently stands exactly when Plaintiff's various impairments became disabling. Therefore, the ALJ was required to call a medical expert to aide in determining the date of onset. Accordingly, the undersigned finds that the ALJ erred as a matter of law in this case and that this matter must be reversed and remanded to an ALJ with an instruction to call a medical expert to determine an exact date when Plaintiff became disabled.

**B.  RFC**

Plaintiff additionally challenges the ALJ's RFC findings prior to January 1, 2003. (Ct. Rec. 27-1, pp. 26-30). The ALJ concluded that, from November 1996 through December 1997, Plaintiff retained the RFC to lift 50 pounds occasionally and 25

pounds frequently and sit, stand and/or walk for six hours in an eight-hour workday.  (AR 288).  From December 1997 through December 2002, the ALJ found that Plaintiff retained the RFC to lift 10 pounds frequently and 15 pounds occasionally and sit, stand and/or walk six hours in an eight-hour workday, and she could carry out only less demanding social interactions.  (AR 289-291).

As described in Section A above, the reports of various medical professionals of record reflect that Plaintiff has experienced years of deteriorating health problems.  As discussed above, this case already requires a remand so that a medical expert may give testimony to ensure that a proper disability onset date is established.  *Supra*.  Accordingly, on remand, the ALJ shall additionally be required to reconsider all medical source opinions, utilize the medical expert in reassessing Plaintiff's RFC, and reassess Plaintiff's RFC prior to January 1, 2003, in light of the medical expert testimony and reports of all medical professionals of record.  The ALJ shall also obtain supplemental vocational expert testimony and take any further action necessary to render a new decision in this matter.

## CONCLUSION

The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*. Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

Cir. 1989).  In this case, further development is necessary to remedy defects and for a proper determination to be made.

On remand, the ALJ shall call a medical expert to determine a proper disability onset date.  The ALJ shall also reconsider all medical source opinions, utilize the medical expert to help reassess Plaintiff's RFC, and reassess Plaintiff's RFC prior to January 1, 2003, in light of the medical expert testimony and reports of all medical professionals of record.  The ALJ shall also obtain supplemental vocational expert testimony and take any further action necessary to render a new decision.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 25**) is **GRANTED** and the above captioned matter is **REMANDED** for additional proceedings as outlined above and pursuant to sentence four of 42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 28**) is **DENIED.**

3.   Judgment shall be entered for **PLAINTIFF**.  An application for attorney fees may be filed by separate motion.

4.   The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

**DATED** this ___16th___ day of January, 2007.


                                  s/Michael W. Leavitt
                              MICHAEL W. LEAVITT
                          UNITED STATES MAGISTRATE JUDGE